IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KYLEN MAJOR, Y13808,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN DOE 1, *Tactical Team Officer,*<br>JOHN DOE 2, *Tactical Team Officer,*<br>JOHN DOE 3, *Tactical Team Officer,*<br>JOHN DOE 4, *Tactical Team Officer,*<br>JANE DOE 1, *Tactical Team Officer,*<br>JOHN DOE 5, *Internal Affairs,*<br>JOHN DOE 6, *Internal Affairs,*<br>JOHN DOE 7, *Internal Affairs,*<br>JOHN DOE 8, *Internal Affairs,* and<br>ANTHONY WILLS, *Warden,*<br><br>    Defendants. | Case No. 25-cv-00056-SPM |

**MEMORANDUM AND ORDER**

**MCGLYNN, District Judge:**

Plaintiff Kylen Major, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center (Menard), bring this action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that tactical officers failed to protect him from a violent attack and that internal affairs officers failed to protect him by

reintroducing him into the environment where he was attacked. Plaintiff seeks monetary damages and transfer to a different correctional facility.

This case is now before the Court for preliminary review of the Second Amended Complaint[1] pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### THE SECOND AMENDED COMPLAINT

Plaintiff makes the following allegations: On March 28, 2024, while in the prison yard, he was attacked by multiple individuals in custody. (Doc. 15-1. p. 7). During the assault, Plaintiff was repeatedly punched in the head and face, had his hair pulled, and was kicked in the head, face, and neck. Within seconds of the attack on Plaintiff commencing, the incident was reported via radio by the "tower," and tactical team officers, John Does 1, 2, 3, and 4 and Jane Doe 1, ran to the gate. (*Id.*). The tactical team officers and other members of staff, however, did not enter the yard

---

[1] Plaintiff has filed a motion seeking leave to file a second amended complaint. (Doc. 15). Pursuant to Federal Rule of Civil Procedure 15(a)(1), "[a] party may amend its pleadings once as a matter of course…if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1)(B). In all other instances, a party may amend only with the opposing party's written consent or the court's leave. FED. R. CIV. P. 15(a)(2). This case is still in the early stages. The previous amended complaint has not been screened, and Defendants have not been served. Accordingly, the Court **GRANTS** the motion for leave to file an amended complaint. The Clerk of Court is **DIRECTED** to file the proposed amended complaint on the docket (Doc. 15-1) as "Second Amended Complaint."

to intervene. (*Id.* at p. 7, 8). Rather, they stood outside the locked gate and watched Plaintiff being brutally assaulted. (*Id.*). At some point, Plaintiff was knocked unconscious. (*Id.* at p. 7). When Plaintiff regained consciousness and started to move, John Does 1, 2, 3, and 4 and Jane Doe 1 directed Plaintiff to standup and walk to the gate. (*Id.* at p. 8). Plaintiff did so with difficulty, and once he reached the gate, he was placed in handcuffs, searched, and walked to a wheelchair. Plaintiff was taken to the healthcare unit. (*Id.*).

In the healthcare unit, Plaintiff was examined by nurses. (Doc. 15-1, p. 8). During his exam, he overheard a lieutenant telling the nurses that he, Plaintiff, was unconscious for 3 to 5 minutes and that staff thought he was dead. The nurses arranged for Plaintiff's transport to a hospital in Chester, Illinois, where he received a CT scan and was diagnosed with abrasions to the face and head and a concussion. (*Id.*).

Upon return, Plaintiff was placed in a segregation cell located in North 2. (Doc. 15-1, p. 9). The cell was dirty and contained only a mattress, with moldy food on the floor and no toilet paper. Plaintiff was not provided a "bedroll," which includes sheets, hygiene products, clothing, and other personal items, for 6 days. (*Id.* at p. 9, 10). On March 29, 2024, Plaintiff was interviewed by two internal affairs officers, John Doe 5 and John Doe 6, regarding the assault incident. (*Id.* at p. 9). During the interview, John Doe 5 and John Doe 6 informed Plaintiff that the assault was gang related, and they asked Plaintiff "what he did" and "was he on count?" Plaintiff responded that he had only been at Menard for a short time, that he did not know anyone, and that he

"wasn't on count." John Doe 5 and John Doe 6 asked several times if Plaintiff would like to be placed in protective custody. Plaintiff declined protective custody and requested to be released back to general population. John Doe 5 and John Doe 6 told Plaintiff that he would not receive a disciplinary ticket but would remain in segregation while the investigation was pending. (*Id.*).

Around April 12, 2024, Plaintiff was again interviewed by two different internal affairs officers, John Doe 7 and John Doe 8. (Doc 15-1. p. 10). They asked Plaintiff "did he get on count yet?" and Plaintiff responded no. They asked whether he wanted to be placed in protective custody, and again, Plaintiff said no. John Doe 7 and John Doe 8 warned Plaintiff that there was a "kill on sight" order placed on him by other individuals in custody and that he could be killed, advising him to check in to protective custody. Plaintiff declined protective custody and instead asked to be moved to another facility where he would be safe. (*Id.*).

On April 30, 2024, Plaintiff was released from segregation. (Doc. 15-1, p. 10). Despite internal affairs' awareness that Plaintiff was under threat, he was returned to East Cell House, the same cell house where he was housed when the attack occurred in the yard. (*Id.*). For three days, individuals in custody approached Plaintiff's cell and told him that "he had to check-in [to protective custody] or die." (*Id.* at p. 11). On May 2, 2024, during second shift, after being told by another individual in custody that if he did not go to protective custody "they were coming to [his] cell to kill [him]," Plaintiff tried to admit himself into protective custody. Plaintiff was told to wait until first shift, 7 a.m.– 3 p.m., on May 3, 2024. As

instructed, Plaintiff checked himself into protective custody on May 3, during first shift and was transferred to West Cell House. (*Id.*).

A few days later, Plaintiff was interviewed by Internal Affairs Officer John Doe 5. (Doc. 15-1, p. 11). John Doe 5 mocked Plaintiff for entering protective custody, saying he "couldn't handle the pressure" in East Cell House. (*Id.*).

## DISCUSSION

Based on the allegations in the Second Amended Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to divide the *pro se* action into the following three counts:

> **Count 1:** Eighth Amendment claim against John Does 1-4 and Jane Doe 1 (Tactical Team Officers) for failing to protect Plaintiff from an assault by multiple inmates on March 28, 2024, despite observing the prolonged attack.
>
> **Count 2:** Eighth Amendment claim against John Doe 5, John Doe 6, John Doe 7, and John Doe 8 (Internal Affairs Officers) for failing to protect Plaintiff by knowingly returning him to the same cell house where he had previously been housed at the time of the assault, despite being aware of threats to his life.
>
> **Count 3:** Eighth Amendment failure to protect official capacity claim against Warden Anthony Wills.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Second Amended Complaint but not addressed in**

**this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]**

### Count 1

Prison officials have a constitutional duty to protect inmates from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To state a failure to protect claim under the Eighth Amendment, a plaintiff must allege that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the defendants acted with deliberate indifference to that risk. *Id.* at 834. Deliberate indifference occurs when a prison official knows of and disregards an excessive risk to inmate health or safety. *Id.* at 837.

Here, Plaintiff alleges that John Does 1-4 and Jane Doe 1, members of the tactical team, observed the prolonged assault against him on March 28, 2024, but failed to intervene and protect him. The attack allegedly lasted 10-15 minutes, with Plaintiff being beaten unconscious. These allegations, accepted as true at this stage, are sufficient to support a claim of deliberate indifference to a serious risk of harm. *See Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (an officer who had the opportunity to intervene to prevent harm but failed to do so can be held liable under the Eighth Amendment).

Accordingly, **Count 1 will proceed** against Tactical Team Officers John Does 1-4 and Jane Doe 1.

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This includes any conditions of confinement claim Plaintiff is intending to bring regarding his time in segregation, as his allegations are not asserted against a listed defendant.

**Count 2**

Plaintiff, however, has failed to plead an Eighth Amendment claim against the internal affairs officers—identified as John Doe 5, John Doe 6, John Doe 7, and John Doe 8. At the time of the assault, Plaintiff was housed in East Cell House, 2 gallery, and at yard with individuals housed in 2, 4, and 6 galleries. (Doc. 15-1, p. 7). Following the assault in the yard, the internal affairs officers offered repeatedly to place Plaintiff in protective custody. Knowing that there was a threat to his safety, Plaintiff still declined protective custody and requested to be released from segregation. When Plaintiff was released from segregation, he was assigned back to East Cell House but placed on a different gallery, 9 gallery. (*Id.* at p. 10). After Plaintiff received verbal threats for three days, he sought protective custody, and his request was granted. Thus, as pled, the conduct attributed to John Does 5, 6, 7, and 8 does not amount to a deliberate disregard to Plaintiff's safety. **Count 2 is dismissed**.

**Count 3**

Plaintiff alleges that he wrote to Warden Anthony Wills informing Wills about the attack on March 28, 2024, and the poor housing conditions he experienced subsequently while in segregation. (Doc. 15-1, p. 11). He also told Wills that his life was placed in danger "willingly and knowingly till [he] was forced to check into (pc) [protective custody] instead of" being transferred to a safer facility. (*Id.*). Plaintiff states that he is suing Wills in his official capacity for an "Eighth Amendment cruel and unusual failure to protect violation." (*Id.* at p. 12).

Warden Wills cannot be sued in his official capacity for monetary damages under Section 1983, and therefore, any such claims are dismissed as barred under the Eleventh Amendment. *See Gerlach v. Rokita,* 95 F. 4th 493, 498-99 (7th Cir. 2024); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

To the extent Plaintiff is seeking prospective injunctive relief, he may only do so if there is an ongoing constitutional violation. *See Kress v. CCA of Tenn., LLC*, 694 F. 3d 890, 894 (7th Cir. 2012). As pled, there is nothing in the Second Amended Complaint from which the Court can plausibly infer that Plaintiff is continuing to suffer from an ongoing constitutional violation. Although he would rather be transferred to a different facility, there are no allegations that Plaintiff continues to be at risk of serious harm while in protective custody and that staff members at Menard are ignoring that risk. Therefore, **Count 3 is dismissed** in its entirety against Warden Wills.

### IDENTIFICATION OF UNKNOWN DEFENDANTS/INJUNCTIVE RELIEF

Plaintiff will be allowed to proceed with Count 1 against John Does 1, 2, 3, and 4 and Jane Doe 1. These defendants must, however, be identified with particularity before service of the Second Amended Complaint can be made. Plaintiff will have the opportunity to engage in limited discovery to ascertain their identities. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d, 832 (7th Cir. 2009). Although all claims against Warden Anthony Wills are dismissed, Wills will remain a defendant in this action in his official capacity only and shall be responsible for responding to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set at a

later date. Once the names of the unknown defendants are discovered, Plaintiff must file a motion to substitute the newly identified defendants in place of the generic designation in the case caption and throughout the Second Amended Complaint.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has submitted two motions for recruitment of counsel (Doc. 3 and Doc. 12). The motions are identical, so the following is the Court's response to both: "When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007).

As to the threshold question, Plaintiff admits that he has not contacted any attorneys prior to filing his motion. Plaintiff claims that he has written to the law library requesting attorney addresses "but still no avail." Other than writing to the law library, Plaintiff does not describe any further efforts he has made to obtain the contact information of and request representation from a lawyer, such as speaking with fellow inmates or requesting information from family or friends who are not incarcerated. Thus, the Court does not find that Plaintiff has made reasonable attempts to obtain counsel or been effectively precluded from doing so prior to filing his motion. Furthermore, at this early stage, the difficulty of this case does not appear to exceed Plaintiff's "capacity as a layperson to coherently" continue to prosecute his claims." *Pruitt,* 503 F. 3d at 655. Plaintiff has some high school education and has

demonstrated his ability to effectively communicate with the Court. Therefore, **Plaintiff's motions for recruitment of counsel are denied**.

Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to: (1) contact at least three attorneys regarding representation in this case prior to filing another motion; (2) include in the motion the names and addresses of at least three attorneys he has contacted; and (3) if available, attach the letters from the attorneys who declined representation or copies of his payment voucher for postage.

## DISPOSITION

For the reasons stated above, the Motion for Leave to File an Amended Complaint is **GRANTED**. (Doc. 15). The Clerk of Court is **DIRECTED** to file the proposed amended complaint on the docket as "Second Amended Complaint." (Doc. 15-1). The Second Amended Complaint survives preliminary review pursuant to Section 1915A. (Doc. 15-1). **Count 1** shall proceed against **John Does 1-4** and **Jane Doe 1 (Tactical Team Officers). Count 2** is **DISMISSED without prejudice. Count 3** is **DISMISSED without prejudice**. All claims against John Does 5, 6, 7, and 8 (Internal Affairs Officers) and Warden Wills are **DISMISSED without prejudice.** The Clerk of Court shall **TERMINATE** John Does 5, 6, 7, and 8 as defendants on the docket.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Defendants Wills (official capacity only) and John Does 1-4 and Jane Doe 1 (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Hoskins, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

With the exception of Warden Wills, Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED**

**DATED: July 14, 2025**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.